The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Jan N. Pittman. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
In addition to stipulations contained in the aforementioned Pre-Trial Agreement, the parties stipulated to a one-page repair order of October 4, 1993 received into evidence at the time of the hearing as stipulated Exhibit No. 1, and a Form 22 regarding plaintiff's employment with defendant received into evidence as stipulated Exhibit No. 2.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a fifty-one year old high school graduate who has work experience for most of his life as a truck driver. Plaintiff became employed with defendant on or about June 7, 1993 as a truck driver. Excessive tardiness in reporting to work and in making deliveries was a problem throughout plaintiff's employment with defendant. During his employment with defendant, plaintiff did not report a problem with falling asleep when he was given warnings by his supervisor regarding his tardiness.
2. In carrying out his job duties with defendant as a truck driver, plaintiff was required to complete a daily check sheet regarding his vehicle. Records reveal that plaintiff did not report on his check sheet or in writing any problem with his vehicle prior to his termination from employment with defendant. However, plaintiff alleges that he did verbally report that his vehicle had an exhaust leak to defendant, and that he drove his truck a couple of times after reporting this leak.
3. As aforementioned, plaintiff had been warned on prior occasions that his tardiness could lead to his dismissal. Plaintiff did not raise the issue of diesel exhaust causing drowsiness in response to any of these warnings.
4. On October 4, 1993, plaintiff was suspended without pay for three days for tardiness in making a delivery. Plaintiff did not offer as an explanation for his tardiness anything with regard to his claim that diesel exhaust was leaking into his cab causing him to be drowsy.
5. While plaintiff was out of work for this disciplinary suspension, Ricky Jackson, the terminal supervisor for defendant in Durham where plaintiff worked, performed routine maintenance on plaintiff's truck. Trucks are routinely inspected for maintenance every 15,000 miles, and when a truck is not in use, they are routinely inspected. This routine maintenance revealed a broken exhaust pipe, which Mr. Jackson replaced.
6. Plaintiff returned to work for defendant on October 7, 1993; however, plaintiff did not resume his driving activities for defendant upon his return to work and was subsequently suspended for charging things unrelated to company business on his business credit card.
7. Prior to the repair of the exhaust pipe on plaintiff's vehicle, exhaust may have seeped into the cab when the truck first started; however when driving down the roadway, it would be expected that the exhaust would blow underneath the truck and not enter the cab area.
8. Prior to his termination from employment with defendant on October 8, 1993, plaintiff had not sought medical treatment for any problems associated with diesel exhaust leaking into the cab of his truck; however, on October 12, 1993, following his termination from employment with defendant, plaintiff first sought medical treatment being seen in the Emergency Room of Durham Regional Hospital complaining of occasional headaches, sleepiness, pain with breathing, and a cough associated with occasional bloody sputum. Chest x-ray performed at that time was unremarkable and diagnosis was irritative chronic bronchitis and chronic diesel fume inhalation. Plaintiff was given a prescription for an antibiotic and was advised to see Dr. Manning for a follow-up appointment if there was no improvement. This Emergency Room record indicated that it would be "very unlikely" for plaintiff to have any long-term effects from the alleged chronic diesel fume inhalation. It further indicated that the plaintiff was able to return to work duty.
9. Plaintiff was not referred at that time for any further testing as there was no reason to believe that plaintiff had experienced any serious consequences as a result of a diesel fuel inhalation. Plaintiff's treatment for chronic bronchitis was not shown to be related to any diesel fume inhalation.
10. Plaintiff failed to follow-up with Dr. Manning or any other physician until December 6, 1993 when he was seen at Lincoln Community Health Center in Durham. At that time, plaintiff was complaining of severe headaches. Although plaintiff alleged that these headaches were related to his exposure to diesel fumes during his employment with defendant, medical evidence of record fails to substantiate plaintiff's allegation.
11. Plaintiff continued to be treated by various physicians at Lincoln Community Health Center for a number of complaints. Plaintiff had previously been injured in an automobile accident in 1980 which resulted in a back injury and had undergone surgery for a herniated disc as a result of that accident. In sporadic visits, plaintiff also continued to complain to doctors at Lincoln Community Health Center of ongoing headaches. Again, while plaintiff alleged that these headaches were connected to his exposure to diesel fumes during his employment with defendant, medical evidence fails to confirm this allegation. In fact, one record states that "this is highly unlikely."
12. There is no medical evidence that attributes plaintiff's claimed headaches to any alleged "poisoning" incurred by plaintiff during his employment with defendant.
13. In March 1990, plaintiff was again seen at Lincoln Community Health Center complaining of shortness of breath. Impression at that time was questionable obstructive lung disease.
14. Thereafter, plaintiff began seeing Dr. Schreiber, an expert in internal medicine with a sub-specialty in pulmonology. Dr. Schreiber first saw plaintiff on April 21, 1995. At that visit, Dr. Schreiber took an oral history from plaintiff which revealed that plaintiff had a history of significant tobacco usage although plaintiff claimed that he had ceased smoking in 1994. During his treatment with Dr. Schreiber and at Duke University Medical Center, plaintiff had also related an inaccurate history he had been exposed to diesel fumes in 1993 following an accident with his 18-wheeler when he had fallen asleep at the wheel. There exists no evidence at all in the record which substantiates that plaintiff was involved in a motor vehicle accident due to sleepiness related to diesel fume exposure.
15. Following his examination of plaintiff, Dr. Schreiber referred plaintiff for a series of tests regarding his pulmonary function capability. After reviewing plaintiff's clinical examination and test results, Dr. Schreiber diagnosed plaintiff's condition as Chronic Obstructive Pulmonary Disease (COPD) secondary to tobacco abuse. Following conservative treatment with inhalation therapy, as of April 1996, plaintiff's condition had improved and was stabilized.
16. Dr. Schreiber is unable to relate plaintiff's moderately severe Chronic Obstructive Pulmonary Disease to the diesel fume exposure plaintiff experienced during the course of his employment with defendant. Furthermore, Dr. Schreiber testified that he was unaware that diesel fumes caused "sleepiness."
17. Although plaintiff was exposed to diesel fume inhalation during the course of his employment with defendant, he sustained no lung damage as a result thereof. Plaintiff has also failed to prove that any loss of earnings after October 8, 1993 resulted from said diesel fume inhalation.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in that he was exposed to diesel fumes. N.C. GEN. STAT. § 97-2(6).
2. Although plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant, plaintiff sustained no disability as a result of said accident, and plaintiff has failed to prove that the medical conditions for which he subsequently sought treatment beginning October 12, 1993 resulted from the injury by accident giving rise hereto. N.C. GEN. STAT. § 97-25; See, Click vs. Freight Carriers, Inc.,300 N.C. 164 265 S.E.2d 389 (1980).
3. Defendant's Motion that plaintiff pay defendant's attorney's fees is HEREBY DENIED, as it appears to the undersigned that the deposition of Dr. Schreiber which was conducted following the hearing in this matter was necessary to determine completely the issues in question.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim for benefits pursuant to the provisions of the North Carolina Worker' Compensation Act is HEREBY DENIED.
2. Defendant shall pay an expert witness fee in the amount of $500.00 to Dr. Schreiber.
3. Defendant shall pay the costs.
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/rst 4/14/97